```
UNITED STATES DISTRICT COURT
 MIDDLE DISTRICT OF FLORIDA
        TAMPA DIVISION
```

PATRICIA NEELEY,

    Plaintiff,

v.                              Case No. 8:12-cv-542-T-33AEP

WELLS FARGO FINANCIAL, INC.,

    Defendant.

_____/

**ORDER**

    This cause comes before the Court pursuant to the October 5, 2012, Report and Recommendation of Anthony E. Porcelli, United States Magistrate Judge (Doc. # 20), in which Judge Porcelli recommends Defendant Wells Fargo Financial's Motion to Dismiss Counts VII and VIII of Plaintiff's Complaint (Doc. # 7) be granted as to Count VII and denied as to Count VIII. Wells Fargo filed timely objections to the Report and Recommendation on October 19, 2012. (Doc. # 21).

    A district judge may accept, reject, or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). In the absence of specific objections, there is no requirement that a district judge review factual findings de novo, Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993), and the court

may accept, reject, or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(C). The district judge reviews legal conclusions de novo, even in the absence of an objection. See Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); Castro Bobadilla v. Reno, 826 F. Supp. 1428, 1431-32 (S.D. Fla. 1993), aff'd, 28 F.3d 116 (11th Cir. 1994).

After careful consideration and being fully advised in the premises, for the reasons that follow, the Court sustains Wells Fargo's objections, accepts the Report and Recommendation in part, and rejects the Report and Recommendation in part. Specifically, the Court finds it appropriate to dismiss Count VII of Plaintiff Patricia Neeley's Complaint on 12(b)(6) grounds as recommended by the Magistrate Judge, and also to dismiss Count VIII of Neeley's Complaint on 12(b)(6) grounds.

## I. Background

According to Neeley's Complaint, in October of 2010, Neeley began receiving phone calls from Wells Fargo. (Doc. # 2 at 4). The calls were made in an attempt to collect a credit card debt allegedly owed to Wells Fargo by Neeley. (Id.). Neeley also says that sometime in October of 2010, she informed Wells Fargo that she could not pay the alleged debt

and would be forced to enter into bankruptcy if Wells Fargo would not negotiate a payment plan. (Id.). Neeley alleges that from November 14, 2010, through November 18, 2010, Wells Fargo called her ten times seeking a collection of her alleged debt. (Id. at 5).

According to Neeley, "In each call, Defendant's representatives were belligerent and would belittle the Plaintiff about her debt then ask for a payment." (Id.). Neeley does not indicate what type of comments Wells Fargo's representatives made; nor does she provide the specifics of the conversations. (Id.; Doc. # 20 at 5). She does state that on November 18, 2010, she retained counsel, and on November 19, 2010, she informed Wells Fargo she had done so and gave Wells Fargo her counsel's contact information. (Doc. # 2 at 5). Neeley claims that the calls from Wells Fargo did not stop, but instead often came from "800" numbers and from numbers caller identification listed as "anonymous" and "unknown." (Id. at 5-6). Eventually, Neeley changed her mobile phone number. (Id. at 6). Wells Fargo also allegedly called Neeley's place of employment in an attempt to collect and occasionally spoke with Neeley's coworkers and supervisor. (Id.). Neeley claims that she has suffered "actual damages as a result of the Wells Fargo's illegal collection

communications in the form of anger, anxiety, emotional distress, fear, frustration, upset feelings, humiliation, and embarrassment, amongst other negative emotions as well as suffering financial hardship and incurring stress-related medical bills and additional financial debts . . . ." (Id. at 6-7).

Neeley initially filed her Complaint in state court alleging that Wells Fargo violated several provisions of the Florida Consumer Collections Practices Act and the Telephone Consumer Protection Act in its attempts to collect on a consumer debt (Doc. # 2). Neeley additionally asserted state law claims for intentional infliction of emotional distress and intrusion upon seclusion arising out of the Wells Fargo's alleged repeated attempts to collect the debt and alleged refusal to cease communication with Neeley. (Id.).

## II. Legal Standard

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)

("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

In Bell Atlantic Corp. v. Twombly, the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 555 (2007) (internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). In all, determining whether a complaint states a plausible claim for relief will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Aschroft v. Iqbal, 556 U.S. 662, 679 (2009).

**III. Analysis**

    **A.    Intentional Infliction of Emotional Distress (Count VII)**

The Court agrees with Judge Porcelli's detailed and well-reasoned findings of fact and conclusions of law as they

-5-

concern Count VII. Thus, Wells Fargo's Motion to Dismiss as to Count VII is granted.

As explained by Judge Porcelli, there are four elements required to state a claim of intentional infliction of emotional distress under Florida law: (1) intentional or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the emotional distress was severe. Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594 (Fla. 2d DCA 2007) (internal citations omitted).

Whether conduct is outrageous enough to satisfy the outrageousness element of a claim of intentional infliction of emotional distress is a question of law for the court to decide, not a question of fact. Steadman, 968 So. 2d at 595. To rise to the level of outrageous conduct, "[i]t is not enough that the intent is tortious or criminal; it is not enough that the defendant intended to inflict emotional distress; and it is not enough if the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort." State Farm Mut. Auto. Ins. Co. v. Novotny, 657 So. 2d 1210, 1213 (Fla. 5th DCA 1995) (citations omitted). In fact, the standard for outrageousness goes beyond mere insults, indignities, threats,

or false accusations; something more egregious is required. <u>Williams v. Worldwide Flight Svcs. Inc.</u>, 877 So. 2d 869, 870 (Fla. 3d DCA 2004). Liability for intentional infliction of emotional distress only attaches "where the defendant's conduct is so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be deemed utterly intolerable in a civilized community." <u>Novotny</u>, 657 So. 2d at 1212.

Even viewing the Complaint in the light most favorable to Neeley and accepting as true all of the factual allegations contained therein, Neeley still fails to allege any facts that give the Court reason to believe Wells Fargo engaged in outrageous behavior. Neeley alleges that Wells Fargo called her -- often, rudely, at inconsiderate hours, and at embarrassing locations, perhaps -- but that it did no more than call her. (Doc. # 2 at 4-6). The conduct alleged by Neeley simply does not rise to the level of egregious conduct required by Florida courts. <u>Williams</u>, 877 So. 2d at 870. In Florida, even offensive and harmful conduct, such as accusing someone of committing a felony or making explicit racial slurs, has been held insufficient to satisfy the element of outrageousness. <u>See</u> <u>id.</u> (finding conduct not outrageous where employer repeatedly made racial slurs and falsely accused

targeted employee of stealing); Hendricks v. Rambosk, No. 2:10-cv-526, 2011 WL 1429646, at *4 (M.D. Fla. Apr. 14, 2011) (finding conduct not outrageous where defendants falsely accused plaintiffs of felony battery and armed robbery).

Speaking specifically to the potential outrageousness of telephone calls, Kent v. Harrison, 467 So. 2d 1114, 1114 (Fla. 2d DCA 1985), involved a "campaign of telephonic harassment." There, the court stated, "[W]e harbor no doubt that the telephone calls received by [plaintiff] were offensive and impaired him, his tranquility and the peacefulness of his home. We are no less persuaded that [defendant's] conduct was intentionally designed and undertaken to distress and annoy [plaintiff]." Kent, 467 So. 2d at 1115. Nonetheless, the court went on to write, "[H]owever, we cannot conclude that such behavior was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Id. See also Oppenheim v. I.C. System, Inc., 695 F. Supp. 2d 1303 (M.D. Fla. 2010) (finding that thirty-five collection agency calls made to an individual during a three-month period did not satisfy the outrageousness standard).

Although Neeley was likely annoyed, offended, and upset by Wells Fargo's alleged telephone calls, such calls, without more, simply do not rise to the level of outrageousness

-8-

required to state a successful claim of intentional infliction of emotional distress under Florida law. Because Neeley has alleged no facts that might satisfy the outrageousness element, Wells Fargo's Motion to Dismiss is granted as to Count VII of Neeley's Complaint.

### B. Intrusion Upon Seclusion

The Florida Supreme Court first recognized the right to privacy in Cason v. Baskin, 20 So. 2d 243, 250 (Fla. 1944): "[T]here is a right to privacy, distinct in and of itself and not merely incidental to some other recognized right, and for breach of which an action for damages will lie." The right to privacy is, essentially, "'the right to be let alone, the right to live in a community without being held up to public gaze if you don't want to be held up to public gaze.'" Id. at 248 (quoting Samuel D. Warren and Louis D. Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193 (1890)). Florida law recognizes three categories of privacy torts: (1) appropriation, (2) intrusion, and (3) public disclosure of private facts. See Oppenheim, 695 F. Supp. 2d at 1308 (citing Allstate Ins. Co. V. Ginsberg, 863 So. 2d 156, 162 (Fla. 2003)).

Here, Neeley alleges only intrusion, also known as intrusion upon seclusion. (Doc. # 2 at 15). As Judge Porcelli

rightly points out, the Florida Supreme Court defines intrusion as "physically or electronically intruding into one's private quarters," and has specified that "[t]he intrusion to which this refers is into a 'place' in which there is a reasonable expectation of privacy . . . ." Ginsberg, 863 So. 2d at 162.

Since the acknowledgment of the right to privacy in Cason, it has always been clear that "the right of privacy has its limitations. Society also has its rights." Cason, 20 So. 2d at 251. In Stoddard v. Wohlfahrt, 573 So. 2d 1060 (Fla. 5th DCA 1991), Florida's Fifth District Court of Appeal spelled out one of those limitations by incorporating the outrageousness standard into the elements required to state a successful claim of invasion of privacy. Id. at 1062-63. The Stoddard court noted that while intentional infliction of emotional distress "and invasion of privacy are both recognizable causes of action, they do share certain similarities in measuring unacceptable conduct upon which a claim is made." Id. at 1062. That court went on to apply the "threshold test to be followed in assessing behavior claimed to constitute the intentional infliction of emotional distress" to the invasion of privacy claim before it. Stoddard, 573 So. 2d at 1062 (citing Ponton v. Scarfone, 468

So. 2d 1009, 1115 (Fla. 2d DCA 1985) (internal quotations omitted). The test – applied by Stoddard to both intentional infliction of emotional distress claims and to invasion of privacy claims -- is "whether such behavior is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Id. (internal quotations omitted).

In his Report and Recommendation, Judge Porcelli correctly noted that at the time the Report and Recommendation was written, neither party had cited "to any case law supporting the conclusion that the outrageousness standard used in the determination of claims for intentional infliction of emotional distress [should] be used in the determination of claims for intrusion upon seclusion." (Doc. # 20 at 7 n.5). Wells Fargo did not cite Stoddard's application of the outrageousness standard to invasion of privacy claims until its Objection to the Report and Recommendation. (Doc. # 21 at 7). Nonetheless, Stoddard must be applied. When considering state law claims, it is the job of the federal courts to apply state law as the state courts would apply it. See Bravo v. United States, 577 F.3d 1324, 1325 (11th Cir. 2009). The Supreme Court has written, "State law is to be applied in the federal as well as the state courts and it is the duty of the

-11-

former in every case to ascertan from all the available data what the state law is and apply it rather than to prescribe a different rule . . . ." West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940). See also Bravo, 577 F.3d at 1325 (applying the language and rule from West). Indeed, "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Id. Thus, as provided in Stoddard, this Court will apply the outrageousness standard to Neeley's invasion of privacy claim. See also Stasiak v. Kingswood Co-Op, Inc., No. 8:11-cv-1828, 2012 WL 527537, at *1 (M.D. Fla. Feb. 17, 2012)(applying Stoddard and using the outrageousness standard in an invasion of privacy claim); Oppenheim, 695 F. Supp. 2d at 1309 (applying Stoddard and using the outrageousness standard in an invasion of privacy claim).

Although Wells Fargo failed to cite Oppenheim in its Motion to Dismiss, and, again, waited until its Objection to the Report and Recommendation to provide relevant case law, Oppenheim does involve facts similar to those before the Court. (Doc. # 7; Doc. # 21). In that case, a PayPal

-12-

transaction left the plaintiff and the defendant in disagreement concerning a sum of money. Oppenheim, 695 F. Supp. 2d at 1305-06. In an attempt to collect the alleged debt from the plaintiff, the defendant placed more than thirty-five calls to the plaintiff over a three-month period. Id. at 1310. Referencing Stoddard, the Oppenheim court explained:

> [I]n measuring the unacceptable conduct upon which a claim is made, causes of action for invasion of privacy share certain similarities with claims for intentional infliction of emotional distress. The threshold test to be followed in assessing behavior claimed to constitute the intentional infliction of emotional distress, is whether such behavior is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.

Id. at 1310. The Oppenheim court concluded that while the defendant's calls to the plaintiff "were annoying and bothersome," they "did not rise to the requisite level of outrageousness and unacceptable conduct contemplated by the tort of invasion of privacy based on intrusion." Id.

Similarly, this Court recently considered the issue in Stasiak v. Kingswood Co-Op, Inc. While the facts in Stasiak are different than those at issue here, it also involved a claim for invasion of privacy based on intrusion upon seclusion. Stasiak, 2012 WL 527537, at *2. In granting the defendant's motion to dismiss, this Court agreed with Oppenheim's application of Stoddard and, citing both of those

cases, explained that "the intrusion must be highly offensive to a reasonable person." Id. The Court also explained that when considering whether behavior rises to such a level, "courts have looked to claims of intentional infliction of emotional distress. Thus, to support a claim for intrusion, the underlying conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Id. (internal citations and quotations omitted).

Just as the Court did in Stasiak, the Court will follow Stoddard's example here and will apply the outrageousness standard used to evaluate claims of intentional infliction of emotional distress to also evaluate this claim of invasion of privacy by intrusion upon seclusion. As discussed above in the analysis of Neeley's intentional infliction of emotional distress claim, Neeley has alleged no facts that would satisfy Florida's outrageousness standard. Thus, for the same reasons that Count VII fails, Count VIII likewise fails to state a cause of action upon which relief may be granted. Therefore, Wells Fargo's Motion to Dismiss is granted as to Count VIII of Neeley's Complaint.

Accordingly, it is hereby

    **ORDERED, ADJUDGED,** and **DECREED:**

-14-

(1) The Report and Recommendation of Anthony E. Porcelli, United States Magistrate Judge (Doc. # 20) is **ACCEPTED** in part and **REJECTED** in part.

(2) Defendant Wells Fargo Financial's Motion to Dismiss Counts VII and VIII of Plaintiff's Complaint (Doc. # 7) is **GRANTED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 28th day of November, 2012.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record